**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES ex rel. CORPS MEDICAL SUPPLY, LLC,**

*Plaintiff/Relator,*

v.

**LOMBART BROTHERS, INC.**

*Defendant.*

**Civil Action No.**

**COMPLAINT**

Plaintiff Corps Medical Supply, LLC, acting as a qui tam relator on behalf of the United States, brings this Complaint against Defendant Lombart Brothers, Inc., and alleges as follows:

**Preliminary Statement**

1. This is an action to recover damages and civil penalties on behalf of the United States for Defendant's violations of the False Claims Act, 31 U.S.C. §§ 3729, *et seq*. (the "FCA").

2. Defendant is, among other activities, a federal government contractor that supplies various federal agencies with ophthalmic equipment. Many of the hundreds of contracts that Defendant has bid on, and won, are contracts that were set aside for exclusive participation by small businesses.

3. While at some point in time Defendant may have actually qualified as a small business, in early 2016 Defendant was purchased by the private equity firm Atlantic Street Capital. Upon information and belief, after this merger Defendant no longer qualified as a small business concern. Nevertheless, Defendant continued to bid on contracts that were set

aside for exclusive participation by small business concerns and affirmatively and falsely certified that it qualified as a small business concern.

4. Despite that Defendant no longer qualified as a small business concern, and because of its false certification, Defendant was nevertheless awarded at least 175 contracts set aside for small businesses. The total amount of these contracts was $7,891,401.

5. On June 24, 2022, after Plaintiff learned that Defendant was not in fact a small business concern, it protested the size of Defendant with respect to Department of Veterans Affairs Solicitation No. 36C25722Q0688 and Award No. 36C25722P0616, on the ground that at the time Defendant submitted its proposal it was owned and controlled by a private equity firm, and that as a result Defendant's size was well in excess of the 500 employees needed to qualify as small under the contract. In response, on July 25, 2022, in light of Defendant's failure to provide requested information about its size, the Small Business Administration made an adverse inference and formally determined that Defendant's business is other than small. A copy of that size determination is attached as Exhibit A.

6. On August 16, 2022, Plaintiff filed with the Department of Veterans Affairs another protest of the size of Defendant with respect to Solicitation No. 36C26322Q0811. In response to that protest, Defendant admitted and agreed that it was not a small business concern. A copy of that size determination is attached as Exhibit B.

7. In short, for a period of over 6 years until it was caught, Defendant was awarded, performed contracts, and submitted claims for payment to the United States under 175 contracts that were set aside for exclusive participation by small business concerns totaling nearly $7.9 million. Defendant obtained these contracts through knowing misrepresentations. Because Defendant's claims for payment implicitly certify that Defendant had a legal right to the award

of these contracts, those claims for payment are "false" within the meaning of the False Claims Act.

8. Plaintiff/Relator brings this qui tam action to obtain redress, in the form of treble damages and statutory penalties, on behalf of the United States.

**Jurisdiction and Venue**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732.

10. This Court has personal jurisdiction over Defendant pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a). Jurisdiction is proper over the Defendant because it has transacted and continues to transact business within this Court's jurisdiction, and upon information and belief some of the acts in violation of 31 U.S.C. § 3729 occurred within this district.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) & (c) and 31 U.S.C. § 3732(a) because Defendant transacted and continues to transact business in this district, and/or upon information and belief because a substantial portion of the events or omissions giving rise to the claims alleged herein occurred in this district.

12. Relator is the original source of the allegations contained herein within the meaning of the FCA.

**Parties**

13. Plaintiff is a corporation organized under the laws of the State of Wisconsin with its principal place of business in Janesville, Wisconsin. Plaintiff is a Service-Disabled, Veteran-Owned Small Business concern.

14. Defendant is a corporation organized under the laws of the State of Virginia with

its principal place of business in Norfolk, Virginia.

15. The United States is named as a Plaintiff pursuant to the FCA as its funds have been directly or indirectly disbursed and awarded to Defendant, as a result of the knowingly false claims, records and certifications alleged in this Complaint made by or caused to be made by Defendant.

## Regulatory Background

### A. The Small Business Act

16. Pursuant to the Small Business Act, 15 U.S.C. §§ 631--657, the U.S. Small Business Administration (the "SBA") maintains a small business government contracting program whereby certain federal government contracts are set-aside for exclusive participation by business concerns that are below certain size thresholds.

17. The government targets awarding at least 23% of federal contract dollars to small business concerns. According to SBA statistics, last year the federal government awarded 27.2% of its contract dollars to small business concerns, totaling $154 billion.

18. The Small Business Act, and its implementing regulations, determine a concern's eligibility for the small business set-aside contract opportunities according to either an employee-based or revenue-based size standard. 13 C.F.R. § 121.201. The size standard varies depending on the applicable industry as classified according to the North American Industry Classification System ("NAICS"). There are numerous NAICS codes which correspond to a specific industry and carry a size specific size standard below which a company in that industry is considered "small." The NAICS codes at issue in this litigation required Defendant to have either less than 1000 employees, less than 750 employees, or less than 500 employees to qualify as a small business concern.

19. A small business concern bidding on a contract set aside for exclusive participation by small business concerns must "self-certify" by certifying to the government agency issuing a solicitation that its business meets the assigned NAICS code "size requirements." A small business concern is also required to register to do business with the federal government by registering on SAM.gov. If a business self-certifies as "small," it can take advantage of contracting opportunities set-aside for exclusive participation by small business concerns.

20. For purposes of the size standard, the "size" of a business is measured as of the date when the business submits a written size self-certification as part of a quote or offer in response to a contract solicitation from the government. 13 C.F.R. § 121.404(a)(l) (2017).

21. The number of employees a company has for qualifying as a small business is based on the average number of employees for the preceding twelve calendar months. 13 C.F.R. § 121.106(b)(1). Full-time, part-time, and temporary employees are all counted as employees for size purposes. 13 C.F.R. § 121.106(a).

22. Significant to this matter, in determining the size of the company, the government counts not only all employees of that company, but also all employees of the company's "affiliates." 13 C.F.R. § 121.106(b)(1). The affiliation concept can have a significant impact on whether a concern is deemed large or small. When two or more companies are affiliated, the SBA combines fee revenue or number of employees of all affiliated companies to determine a concern's size status, i.e., small or other-than-small. Thus, each affiliated company is less likely to fall below the SBA's applicable size standard and is less likely to be eligible for preferred contracting status.

23. "Affiliation" exists between businesses when one business, directly or indirectly,

controls or has the power to control another business, or when a third party, directly or indirectly, controls or has the power to control both businesses. See 13 C.F.R.§121.103(a); FAR §19.101.

24. Control may arise through ownership, management, or other relationships or interactions between the parties. See 13 C.F.R. § 121.103(a). If one or more officers, directors, managing members, or general partners of a business controls the Board of Directors and/or the management of another business, the businesses are affiliates. *See Id.* § 121.103(e).

25. Pursuant to Federal Acquisition Regulation, 48 C.F.R § 52.212-3, contractors represent whether they meet the status requirements for various small business categories at the time of submission of a quote or offer in response to a government solicitation.

26. For the purposes of federal procurement programs for which status as a small business is required, a concern must not exceed the size standard under the applicable NAICS code specified in the solicitation, whether the threshold in based upon number of employees or average annual revenues. 13 C.F.R. § 121.401-413.

27. Both submissions of quotes or offers set aside for exclusive participation by small business concerns and registration in the SAM.gov database for the purpose of being considered for an award as a small business concern are deemed "affirmative, willful and intentional certifications of small business size and status." 15 U.S.C. § 632(w)(2).

28. Each time a concern enters into a set-aside contract with the government and each time it files its annual SAM.gov certification, it becomes subject to a stiff sanctions regime intended to deter small business fraud. Section 16(d) of the Small Business Act provides severe criminal penalties for knowingly misrepresenting the small business size status of a concern in connection with procurement programs. 15 U.S.C. § 645(d). Section 16(a) of the Act provides

for criminal penalties for knowingly making false statements or misrepresentations to SBA for influencing in any way the actions of the Agency. 15 U.S.C. § 645(a); *see also* 13 C.F.R. § 121.108.

29. These and other penalties are set forth in the certification made by each business concern bidding under a small business set-aside: "any person who misrepresents a firm's status as a business concern that is small . . . in order to obtain a contract to be awarded under the preference programs established pursuant to section 8, 9, or 15, 31, and 36 of the Small Business Act shall (i) Be punished by imposition of fine, imprisonment, or both; (ii) Be subject to administrative remedies, including suspension and debarment; and (iii) Be ineligible for participation in programs conducted under the authority of the Act." 15 U.S.C. § 645(d).

30. As noted above, the SBA's small business government contracting program is a self-certifying system, meaning that a contractor competing for contracts set-aside for exclusive participation by small business concerns must certify in its quote or proposal that it meets the applicable size standard. The veracity of the self-certification is not determined by the government at the time of submission as to whether the concern actually meets the size standard. Rather, the SBA maintains a protest system whereby a competing concern that loses the competition for the set-aside contract may file a protest with the SBA alleging that the awardee does not qualify under the applicable size standard. When a protest is filed, the SBA requires the protested awardee concern to complete an SBA Standard Form 355 to gather information on the concern. The SBA Standard Form 355 is signed under oath by a representative of the concern. If the SBA determines that the protested company is "other than small," the government must terminate the awarded contract.

31. The Small Business Act of 2010 codified the calculation of damages for

misrepresentation under the FCA. Section 1341 of the Jobs Act, also called the "Presumed Loss Rule," provides a presumption of loss to the government equal to the total amount expended on the contract. 15 U.S.C. § 632(w)(1). The offender may not discount the measure of damages by crediting the value of services or goods provided to the government under the contract. *Id*.

32. Congress established that the government's damages calculation shall use an intended beneficiary analysis. That is, where the government intended the contract to benefit an eligible small business concern, and an ineligible business concern received the benefit of that contract, the entire amount paid to the ineligible contractor becomes the loss to the government. This rule makes contractors liable for three times the total amount of money received under the contract, plus penalties and fees. 31 U.S.C.§ 3729.

33. The Small Business Act also includes a Deemed Certification provision, under which a proposal, quote or bid for a federal contract or subcontract "intended for award to small business concerns" constitutes an "affirmative, willful, and intentional certification of small business size and status." 15 U.S.C. § 632(w)(2XA)-(B). A contractor also makes such a certification by registering as a small business concern "on any Federal electronic database for the purpose of being considered for award of a Federal ... contract [or] subcontract." *Id*. § 632(w)(2)(C).

**B. The False Claims Act**

34. The FCA, 31 U.S.C. §§ 3729-3733, is the primary tool with which the United States combats fraud against the government and protects the federal Treasury. The FCA provides that a person is liable to the United States for each instance in which the person "knowingly presents, or causes to be presented, to an Officer or employee of the United States

government ... a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

35. The FCA establishes liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government." *Id*. § 3729(a)(2). The FCA further establishes liability for any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." *Id*. § 3729(a)(1)(B).

36. The FCA defines "knowingly" to mean that a person, with respect to information, "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or(3) acts in reckless disregard of the truth or falsity of the information." No proof of specific intent to defraud is required. *Id*. at §3729(b).

37. The FCA defines the term "claim" to mean, in relevant part: "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that - (i) is presented to an officer, employee, or agent of the United States; or, (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the government's behalf or to advance a government program or interest, and if the United States government—(I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requited or demanded." *Id*. §3729(b)(2)(A).

38. Any person who violates the FCA is liable to the United States for a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), plus three times the amount of damages which the government sustains because of the act of that person. Id. § 3729(a); 15 C.F.R.§ 63(a)(3).

**Factual Allegations**

39. Lombart Instruments, Inc. is the "Doing Business As" for Defendant Lombart Brothers, Inc. It was established in 1979. *See* Exhibit C.

40. According to its website, Defendant claims to be the nation's largest distributor of ophthalmic instruments, services, and supplies. *See* https://lombartinstrument.com. One of its lines of business is an authorized dealer of ophthalmic equipment to federal government agencies. According to Defendant's SAM registration, it has been an active federal government contractor since at least 2002. Ex. C.

41. Since the beginning of 2016, Defendant has been awarded 175 contracts with various federal government agencies including the Department of Defense, Department of Veterans Affairs, and the Department of Health of Human Services that have been set aside for exclusive participation by small business concerns. The total value of these contract is nearly $7.9 million. A spreadsheet identifying each of these contracts is attached as Exhibit D.

42. In early 2016, Defendant was purchased by the private equity firm Atlantic Street Capital. *See* Ex. E at 2. Atlantic Street Capital has operated since at least 2006. It purchases and invests in small to medium-sized companies. According to its website, www.atlanticstreetcapital.com, it has $1.2 billion in assets under management and has completed over 50 transactions. *See* Exhibit F.

43. According to the "News" section of its website, prior to purchasing Lombart Brothers in 2016, Atlantic Street Capital had already purchased, among others: (1) Double B Foods Inc., a seller of beef jerky, wraps, and appetizers; (2) EZE Trucking, a provider of specialty logistics services for the infrastructure market; (3) Network Express, Inc., a provider of specialized distribution services designed for pharmacies serving the long term care market;

(4) Alex Apparel Group, Inc., a women's eveningwear maker; (5) Z Wireless, a provider of Verizon wireless products and services; (6) Uniguest Inc., a provider of end-to-end information delivery solutions for the hospitality industry; and (7) Sandwich Shop Holdings Company, a Franchisee of Jimmy John's Gourmet Sandwich Shop Restaurants in Greater Chicago Area.

44. Because they are private companies, there is no publicly available information concerning the number of employees of Lombart Brothers, Atlantic Street Capital, or any of the companies acquired by Atlantic Street Capital. However, upon information and belief, because of the affiliation rule detailed above, by the time that it was acquired by Atlantic Street Capital in 2016, Lombart Brothers no longer qualified as a small business concern for the contracts it was bidding on because it and its affiliates all controlled by Atlantic Street Capital had too many employees.

45. In 2017, Defendant continued to grow. It acquired INNOVA Medical Ophthalmics, Canada's leading distributor of ophthalmic instruments which markets and sells ophthalmic instruments, provides customer consultation services, and offers installation and maintenance/repair services to ophthalmologists and optometrists primarily in Canada, with sales into the United States, Mexico and abroad. *See* Exhibit G.

46. In 2018, Defendant acquired Enhanced Medical Services, the leading distributor of pre-owned ophthalmic instruments in the United States. Exhibit E.

47. In 2019, Atlantic Street Capital formed Advancing Eyecare Holdings, which included among others Defendant and Marco Ophthalmic Inc (Marco), a market leading, high-tech instrumentation supplier. Exhibit H. Later in 2019, Advancing Eyecare acquired both Ophthalmic Instruments & Consulting Company (OIC), the leading expert and supplier of classical and diagnostic equipment in the Pacific Northwest, and Ophthalmic Instruments, Inc.

(OII), a leading distributor of quality ophthalmic instruments. Exhibit I and J.

48. In May 2022, Atlantic Street Capital announced that it has sold Advancing Eyecare to Cornell Capital. In the press release, Atlantic Street Capital described Advancing Eyecare as the leading provider in the eyecare instrumentation marketplace and that it was comprised of Lombart Instrument, Marco Ophthalmic, INNOVA Medical, S4Optik, Santinelli International, and other leading brands. Exhibit K.

49. At that time of the sale to Cornell Capital, Advancing Eyecare alone had a total of more than 450 employees, *See* Ex. L (print out from www.advancingeyecare.com), and Atlantic Street Capital owned at least 17 additional companies.

50. According to its website, Defendant's current owner, Cornell Capital is a private investment firm with approximately $6 billion of assets under management. It owns and controls 13 different entities including: (1) Lorom, headquartered in Taipei, Taiwan, is a leading manufacturing solutions provider focusing on specialized cable manufacturing and assembly, with approximately 6,000 employees; (2) Knowlton Development Corporation, a global leader in innovation, formulation, packaging, device design, and manufacturing for beauty, personal care, and home care brands with 15,000 employees; and (3) Instant Brands, a global company with brands such as Pyrex, Corelle, Instant, CorningWare, Snapware, Chicago Cutlery and Visions, with approximately 2,300 employees. *See* Exhibits M and N (printouts from https://cornellcapllc.com).

51. While, upon information and belief, Defendant no longer qualified as "small" once it was acquired by Atlantic Street Capital in 2016, by the time of its sale to Cornell Capital in 2022, it was clearly not a small business concern. While it is not clear from the publicly available information precisely when Defendant stopped being small, that clearly occurred at

some point between 2016 and 2022. Yet throughout that entire time period, Defendant continued to consistently certify that it was a small business concern, and bid on and was awarded at least 175 contracts that were set aside for exclusive participation by small business concerns with a total value of nearly $7.9 million. Exhibit D.

52. Defendant's certifications that it was “small” were material and essential to the decision of the federal government agencies that award the contracts to Defendants, and the Defendants would not have been awarded the contracts by the government absent the false certifications.

53. At some point around the sale of Defendant to Cornell Capital, Plaintiff learned that Defendant was not small. On June 24, 2022, Plaintiff protested the size of Defendant with respect to Department of Veteran Affairs Solicitation No. 36C25722Q0688 and Award No. 36C25722P0616, on the ground that at the time Defendant submitted its proposal it was owned and controlled by a private equity firm, and that as a result Defendant’s size was well in excess of the 500 employees needed to qualify as a small business concern under the solicitation and contract.

54. On July 25, 2022, the Small Business Administration made a formal size determination that Defendant’s business is other than small. A copy of that determination is attached as Exhibit A. The reason for that size determination was an adverse inference drawn by the SBA from the fact that Defendant failed to provide the SBA with required documentation notwithstanding repeated extensions provided by SBA.

55. On August 16, 2022, Plaintiff filed with the Department of Veteran Affairs another protest of the size of Defendant with respect to RFQ 36C26322Q0811. In response to that protest, Defendant admitted and agreed that it was not a small business. A copy of that

determination is attached as Exhibit B.

**First Cause of Action: Violation of 31 U.S.C §3729(a)(l)(A)**

56. Paragraphs 1 through 55 are incorporated herein.

57. This is a claim for treble damages and forfeiture under FCA 31 U.S.C. §§ 3729-3733.

58. Defendant either knowingly, or in reckless disregard of the truth, misrepresented and caused to be submitted to the United States Government false or fraudulent claims for set-aside small business contracts.

59. Defendant's representations to the United States were either knowingly false, or made in reckless disregard of the truth. By engaging in the conduct alleged herein, Defendants either knowingly, or in reckless disregard of the truth, submitted, or caused to be submitted, false claims for payment to the United States in violation of 31 U.S.C. § 3729(a)(1)(A).

60. Defendant either knowingly, or in reckless disregard of the truth, made, used or caused to be made or used false statement and records to get such false and fraudulent claims paid and approved by the United States Government.

61. The United States, unaware of the falsity of the records, statements and claims made by Defendant, paid Defendant for claims that would otherwise not have been allowed.

62. By reason of Defendant's false records, statements and claims, the United States has been damaged and continues to be damaged.

**Second Cause of Action: Violation of 31 U.S.C §3729(a)(l)(A)**

63. Paragraphs 1 through 62 are incorporated herein.

64. Defendant either knowingly, or in reckless disregard of the truth, made false representations to the United States. Defendant thus knowingly, or in reckless disregard of the

truth, used false records or statements to get false or fraudulent claims paid or approved by the United States in violation of 31 U.S.C. § 3729(a)(1)(B).

65. Because of Defendant's acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $5,000 and up to $10,000 for each violation.

66. By reason of Defendant's false records, statements and claims, the United States has been damaged and continues to be damaged.

**Prayer for Relief**

WHEREFORE, Plaintiff/Realtor prays for the following relief:

1. Judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained as a result of the Defendant's unlawful conduct;

2. Civil monetary penalties for each false and fraudulent claim submitted to the United States by Defendants;

3. An award to Relator pursuant to 31 U.S.C. §3730(d);

4. An award of reasonable attorneys' fees, costs, and expenses;

5. Such other relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiff/Relator hereby demands a jury trial on all issues triable to a jury.

Dated: March 27, 2023

LAW OFFICE OF STEVEN BARENTZEN

Steven Barentzen
1750 K Street, NW, Suite 700
Washington, DC 20006

Phone: (202) 289-4333
Fax: (202) 888-6268
Steven@barentzenlaw.com

*Attorney for Plaintiff*